# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MARVIN SAIZ,**

    **Plaintiff,**

**vs.**　　　　　　　　　　　　　　　　　　　　**No. 07-CV-1295 ACT/RLP**

**HONEYWELL FEDERAL MANUFACTURING**
**AND TECHNOLOGIES,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Honeywell Federal Manufacturing and Technologies' ("Honeywell FM&T") Motion for Summary Judgment and Memorandum Brief in Support. [Doc. Nos. 14 and 15].  Plaintiff Marvin Saiz ("Saiz") responded and Honeywell FM&T replied. [Doc. Nos. 19 and 20].  The Court having reviewed the pleadings, relevant law and being otherwise  fully informed, finds the motion is well-taken and will be GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

On November 19, 2007, Saiz filed a Complaint for Damages in the Second Judicial District Court, County of Bernalillo, State of New Mexico against Honeywell FM&T.[1] [Doc. No. 1, Ex. 1A]. In his Complaint, Saiz alleges that he was wrongfully terminated by Honeywell FM&T and makes claims for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Wrongful Retaliatory Discharge and Prima Facie Tort.  Id.

Honeywell FM&T filed a Motion for Summary Judgment asking the Court to dismiss all of Saiz's claims.  [Doc. No. 14].  Honeywell FM&T asserts that Saiz was an at-will employee who

---

[1] This matter was removed to federal court on December 21, 2007.  [Doc. No. 1.]

could be terminated at any time and for any or no reason. Further, Saiz was informed at the beginning of his employment that "each associate must qualify for and keep a government security clearance as a condition of employment." [Doc. No. 15, p. 1].

The parties do not dispute that Saiz's security clearance was suspended in 2001 by the United States Department of Energy ("DOE") or that the DOE makes the decisions regarding the granting, suspension or revocation of security clearances. [Doc. No. 15, pp. 3-4; Doc. 19, p. 3.] Nor is there any dispute that Honeywell FM&T allowed Saiz to continue working on non-classified activities while he appealed his suspension and that the DOE issued a decision to revoke Saiz's clearance effective December 6, 2004. [Doc. No. 15, p. 4 and Doc. No. 19, pp. 3-4.]

Honeywell FM&T argues that once they were informed by the DOE that Saiz's security clearance would not be reinstated, they appropriately terminated Saiz's employment. [Doc. No. 15, p. 8.] Honeywell FM&T states that Saiz's claims for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing fail as a matter of law because Saiz was an at-will employee who could be terminated for any or no reason. Honeywell FM&T further asserts that Saiz was informed that failure to maintain his security clearance would result in his termination. [Doc. No. 15, pp. 6 - 8.] As to Saiz's Wrongful Discharge claim, Honeywell FM&T argues that Saiz cannot raise a genuine issue of fact with respect to his contention that his "protected activity" of making a workers compensation claim caused the termination of his employment. [Doc. No. 15, pp. 8-9.] Finally, Honeywell FM&T contends that Saiz's *prima facie* tort claim is inapplicable to this situation. [Doc. No. 15, pp. 9 - 10.]

Saiz argues that even though he was hired in 1996, he was not required to maintain a security clearance until 1998. [Doc. No. 19, p. 1.] He states that after self-reporting an incident, pursuant

to company policy, his security clearance was suspended in July, 2001 and in September 2001 it was determined that it would "not be reinstated by a Hearing and Appeals final decision." [Doc. No. 19, p. 2.] Saiz claims that he continued in his same position for three years -- through December, 2004 when he was unlawfully terminated while on medical leave, "allegedly for the revocation of his security clearance that the Defendant was aware of a least a year prior." *Id.* Saiz alleges that his original at-will employment status was altered by "certain representations made to him by Defendants which Defendants later breached." [Doc. No. 19, p. 3.] Saiz attributes his "wrongful termination" to the pursuit of his workers compensation claim that arose out of a 1997 incident when he fell from a ladder. *Id.*

## ANALYSIS

### Summary Judgment Standard

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving [sic] party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(citation omitted). Upon meeting that burden, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact." Id.

The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine if the evidence is significantly probative

or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party." Id. at 249-50. Mere assertions, conjecture, or the existence of a scintilla of evidence in support of the non-movant's position, are not sufficient to show a genuine issue of material fact; an issue of material fact is genuine only if the non-movant presents facts such that a reasonable jury could find in favor of the non-movant. Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006) (citations and quotations omitted).

For purposes of summary judgment, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all inferences in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

D.N.M.LR-Civ. 56(b) states in part that "material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted." An opposing affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e)(1).

## Undisputed Material Facts

Saiz does not dispute Honeywell FM&T's Statement of Material Facts ("SMF") numbers one, two, eight and ten through fourteen. The following facts are not in dispute unless otherwise noted. In 1996, AlliedSignal Inc. hired Saiz. Honeywell FM&T is the successor to AlliedSignal Inc, a government contractor with operations in Kansas City, Missouri and Albuquerque, New Mexico. Honeywell FM&T contracts with the United States Department of Energy ("DOE") and is required to conform with all DOE security requirements and cannot permit individuals to have access to classified information except in accordance with the law. The DOE retains the exclusive

right to make decisions regarding the granting, suspension or revocation of security clearances, and the DOE made the ultimate decision to revoke Saiz's security clearance.

In 2001, the DOE suspended Plaintiff's security clearance. The suspension resulted from Saiz's self-reporting of an incident that occurred on November 4, 2000. Although not material, Saiz stated in his affidavit that he was charged with a criminal offense in 2000 and that this charge resulted in a conviction of a misdemeanor offense.[2]  [Doc. 19, Saiz Aff. at ¶ 7.]  On September 9, 2001, it was determined by a Hearing and Appeals final decision that Saiz's security clearance would not be reinstated. [Doc. 19, p. 4, ¶ 6.]  However, this was not yet the DOE's final decision as to the security clearance suspension and revocation or with respect to Saiz's later appeal of the suspension.

A contract exists between Honeywell FM&T and the DOE that allows an employee to continue working on activities not involving access to classified information pending the DOE's final decision regarding an employee's security clearance. Saiz continued to work on non-classified matters during the time period between the suspension of his security clearance and the revocation decision. Saiz appealed the suspension of his security clearance in accordance with DOE procedures.

Effective December 6, 2004, the DOE notified Honeywell FM&T that the DOE denied Saiz's appeal and had issued a final decision to revoke his security clearance. In a letter dated December 17, 2004, Honeywell FM&T notified Saiz that his employment was terminated because of the government's revocation of his security clearance. [Doc. 15, Doc. 19.]

---

[2]Although not material to this motion for summary judgment, Saiz's application materials indicate he was also convicted of grand larceny and a D.W.I. in 1980. [Doc. 15, Ex. A-1.]

5

Although Saiz states that he disputes SMF #3, he does not provide any admissible evidence to contest Honeywell FM&T's assertion that it submits requests for employment security clearances only for employees who require access to classified matter as part of their official duties. Instead, Saiz contends that he worked without a security clearance from the date of his hire by AlliedSignal until late 1997 and that he continued with the same duties even after his clearance was revoked. This assertion is immaterial to the claims at issue.

SMF #5 asserts that Saiz signed an agreement when applying for his position in 1996 that provided, in relevant part, that the applicant "will be required to obtain and retain through the Division and at its expense, a DOE security clearance;" "I understand that nothing contained in this employment application or in any other document . . . creates a contract of employment between the Kansas City Division and myself or a contract for the providing of any benefit. I also understand that any individual who is hired may voluntarily leave and may be terminated by the Kansas City Division at any time and for any reason."

Saiz does not dispute that he signed the agreement and application with the above-stated language. However, he argues through his affidavit that SMF #5 is "misleading" because certain representations made to him by Honeywell FM&T negated Saiz's at-will employment status. Saiz fails to identify what the alleged representations by Honeywell FM&T were, who made them, when they were made, or how they were breached. Thus, Saiz's affidavit testimony to this effect is nothing more than an impermissible conclusory and self-serving statement that fails to dispute SMF #5.

Saiz asserts in his response [Doc. 19, pp. 11-12] that Honeywell FM&T breached portions of its policy manual dealing with workers compensation and medical disability and that it offered

6

a relocation benefit for employees needing accommodations. Saiz contends that he was not allowed to retrieve the policy manual that would support these claims and that Honeywell FM&T breached the policy manual with respect to Saiz's employment. Yet, Saiz provides no admissible evidence even in his affidavit concerning representations made in the policy manual. Moreover, neither party mentioned any type of employment manual, policy manual or employee handbook in the Joint Status Report that was filed on June 18, 2008. [Doc. No. 13]. Nor did Saiz suggest that Honeywell FM&T was not fully compliant with its Rule 26 disclosures made on June 17, 2008. [Doc. No. 12].

Saiz argues summarily in his response brief that more discovery is necessary. However, Fed.R.Civ.P. 56(f) requires that if a party believes that additional discovery is required in order to fully respond to a motion for summary judgment, that party must submit an affidavit showing "that, for specified reasons, it cannot present facts essential to justify its opposition." No such affidavit was submitted to the Court. Accordingly, the Court finds that Saiz failed to raise a genuine issue of material fact with respect to alleged representations made to him in a policy manual that were purportedly breached.

SMF #6 provides that the "Employment Application" that Saiz received and filled out when he applied for his position states, in part: "Because the work involves 'classified' information and material, each associate must qualify for and keep a government security clearance as a condition of employment." The Employment Application also informed applicants, including Saiz, that: "You may become a KCD associate before your clearance is granted. If so, you will be assigned to work in an area of the plant where you will not have access to classified information. Your continued employment at the Kansas City Division will be dependent upon your obtaining and keeping a clearance."

7

Saiz again does not dispute the language of the Employment Application, his receipt of this information when he was hired, or his agreement with the application when he signed it. Instead, he argues through his affidavit that SMF #6 is "misleading and mischaracterizes the nature and history of his employment." He further asserts that during the entire duration of his employment, he worked in a non-classified area performing non-classified work, which explains why he was allowed to work approximately seven years for Honeywell FM&T without a security clearance. Saiz provides no admissible evidence in his affidavit as to what duties he performed, or that his work never involved classified information. Moreover, Saiz does not rebut the language in his application for employment that expressly states his work will involve classified information. Finally, he does not contest, nor could he, that he was required to obtain and did obtain a security clearance even though it was later revoked.

SMF #7 refers to a "Compensation Agreement" that Saiz signed, stating that he understood his employment was at-will and could be terminated at any time with or without cause. [Doc. No. 15, p. 3.] Saiz does not dispute that he signed and agreed to the terms of this "Compensation Agreement." [Doc. No. 19, p. 3.] Instead, he states that SMF #7 is misleading and "that his signature does not negate the fact that Plaintiff's at-will employment was altered by certain representation made to him by the Defendant which Defendant later breached." Id. Saiz failed to provide the Court with any evidence whatsoever regarding the alleged representations, nor did he submit an affidavit in compliance with Fed.R.Civ.P. 56(f).

SMF #9 states that "[w]hen informed that an employee's security clearance has been finally revoked by DOE, Honeywell FM&T may not permit employees to remain in positions of employment that require access to classified information as part of their official duties." [Doc. No.

8

15, pp. 3-4.] Saiz attempts to dispute this fact by stating that it does not apply to him because his job duties did not require access to classified information. [Doc. No. 19, p. 3.] Once again, Saiz cites generally to his affidavit but provides no admissible evidence to support his argument or an affidavit in compliance with Fed.R.Civ.P. 56(f).

Fed.R.Civ.P. 56(e)(1) requires in part that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e)(2) states that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Conclusions, opinions, or conjecture are insufficient to prevent summary judgment or to justify additional discovery. Conclusory and self-serving affidavits will not defeat summary judgment. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

Saiz failed to comply with the requirements of Rule 56. He failed to dispute any of Honeywell FM&T's material facts in a manner required under Fed.R.Civ.P. 56. Accordingly, the Court finds that Honeywell FM&T's Statement of Material Facts as set forth in its Memorandum Brief in Support of Honeywell FM&T's Motion for Summary Judgment [Doc.No. 15] are undisputed for purposes of Honeywell FM&T's motion for summary judgment. Thus, the Court analyzes the claims in view of the undisputed material facts.

### At-Will Employment

Under New Mexico law, "[e]mployment without a definite term is presumed to be at will." Trujillo v. N. Rio Arriba Elec. Coop., Inc., 41 P.3d 333, 341 (N.M. 2001). At-will employment means that employment is terminable at will by either the employer or the employee for any reason

or for no reason at all. Hartbarger v. Frank Paxton Co., 857 P.2d 776, 779 (N.M. 1993), *cert. denied*, 510 U.S. 1118 (1994). There are exceptions to the at-will rule; e.g., "where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge," Trujillo, 41 P.3d at 341 (quotation omitted), or where the discharge of an employee contravenes a "clear mandate of public policy." Vigil v. Arzola, 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct.App.1983), *rev'd in part on other grounds by* 101 N.M. 687, 687 P.2d 1038 (1984), *overruled in part on other grounds by* Chavez v. Manville Prods. Corp., 108 N.M. 643, 777 P.2d 371 (1989).

Saiz's Claims

I.    Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

The undisputed material facts establish that Saiz was an at-will employee and that Saiz's employment with Honeywell FM&T could be terminated for any or no reason. Saiz was informed of and expressly agreed to his at-will status in two different documents. In the employment application he signed, it states: "I understand that nothing contained in this employment application or in any other document . . . creates a contract of employment between the Kansas City Division and myself or a contract for the providing of any benefit. I also understand that any individual who is hired may voluntarily leave and may be terminated by the Kansas City Division at any time and for any reason." In the Compensation Agreement he signed, Saiz agreed that he understood his employment was at-will and could be terminated at any time with or without cause. Saiz does not dispute that he received, signed and agreed to the terms of these documents.

Instead, Saiz argues that an implied contract arose based on his observations of how other employees were treated, unidentified portions of a policy manual that are not part of the record, and

vague or unidentified representations by Honeywell FM&T. Saiz fails to provide specific admissible evidence regarding any alleged written representations, oral representations or promises. Likewise, he fails to provide admissible evidence of the conduct of the parties, or a combination of representations and conduct that would alter his at-will status. *See* Hartbarger, 857 P.2d at 780. While New Mexico law requires that "the totality of the parties' relationship, circumstances, and objectives will be considered to overcome the presumption that the employment [] was terminable at will," Saiz's evidence "falls short in the face of the clear, unequivocal language stating that employment was at will." Montano v. Christmas by Krebs Corp., 2008 WL 4279742 at *3 (10th Cir. Sept. 18, 2008) (internal citations omitted) (applying New Mexico law).

Without such evidence, Saiz's breach of contract claim fails as a matter of law. Even if Saiz could demonstrate he had a reasonable expectation of being terminated for cause, based on the totality of the circumstances of his employment relationship, Honeywell FM&T clearly provided evidence of a legitimate, non-discriminatory reason for the termination decision. Saiz was advised from the beginning of his employment that he needed a security clearance to remain employed.

> Because the work involves 'classified' information and material, each associate must qualify for and keep a government security clearance as a condition of employment. . . . Your continued employment at the Kansas City Division will be dependent upon your obtaining and keeping a clearance.

Thus, even though Saiz may have worked for a number of years in a position which he believes did not require a security clearance, Honeywell FM&T had a legitimate, non-discriminatory reason for terminating his employment.

As Saiz's breach of contract claim fails as a matter of law based on his at-will employment, so too does his claim for breach of implied covenant of good faith and fair dealing. Watson v.

Blankinship, 20 F.3d 383, 387 (10th Cir. 1994); Melnick v. State Farm Mutual Automobile Ins. Co., 749 P.2d 1105 (N.M. 1988) (New Mexico does not recognize a cause of action for breach of covenant of good faith and fair dealing in an at-will employment relationship).

II.     Wrongful Discharge

In New Mexico, wrongful or retaliatory discharge is a recognized exception to the at-will employment doctrine. Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp., 738 P.2d 513, 515 (N.M. 1987). For an employee to recover under a claim for wrongful discharge, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage. Vigil, 102 N.M. at 689, 699 P.2d at 620. The New Mexico statutes provide that an employer shall not discharge or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits. § 52-1-28.2(A) NMSA 1978.

Saiz claims that his termination stems from his pursuit of workers compensation and disability benefits. [Doc. 19, p. 2.] Saiz states that based on his observations of how other employees were treated by Honeywell FM&T, "Plaintiff can only attribute his wrongful termination to his pursuit of his workers compensation claim, which effectively breached the Defendant's implied contract of employment with Plaintiff." [Id.] Plaintiff's claim is primarily based on conjecture.

In his affidavit, Saiz states that he fell off a ladder at work in July 1997, was injured and sought medical attention, and filed a workers compensation claim. [Doc. 19, Saiz Aff. at ¶ 5.] Saiz then testifies that seven years later, on August 16, 2004, he visited a doctor because of his work-related injuries, apparently from 1997. Following this visit in August 2004, Saiz was placed on

medical or disability leave. He further states that he was approved for medical or disability leave through January 15, 2005. Because he was terminated on December 17, 2004, while still on medical leave, Saiz surmises that he was terminated because of his workers' compensation claim or disability leave.

As noted above, the Court has already determined that there was no express or implied contract of employment. The proximity of the termination decision with Saiz's medical leave might raise a genuine issue of material fact as to the retaliatory discharge claim, if Saiz had more evidence than proximity alone. However, he does not.

Saiz was informed from the beginning of his employment that he was required to obtain and retain a security clearance in order to maintain employment. The DOE learned facts in 2000 that jeopardized Saiz's security clearance and the DOE suspended his security clearance in 2001. The DOE administrative review process began in 2001. Saiz requested a hearing concerning his security clearance status, and a hearing was held on November 1, 2001 by the Office of Hearings and Appeals, which issued an "unfavorable" decision on April 11, 2002. Saiz appealed that decision. The Office of Hearings and Appeals Appeal Panel then performed a review of the decision. That review, for some unexplained reason, did not conclude until December 2004. However, it is undisputed that the DOE notified Honeywell FM&T, effective December 6, 2004, that Saiz's security clearance was revoked. [Doc. 15, Ex. C, Miller Aff.] Eleven days later, on December 17, 2008, Saiz was notified by letter that he was terminated because of the government's revocation of his security clearance. Honeywell FM&T did not terminated Saiz until the appeal review process was completed and the DOE issued a final determination that Saiz's security clearance was revoked.

Saiz, according to his own affidavit, had been on medical leave since August 2004. He was not terminated until mid-December 2004, just days after Honeywell FM&T received notice of DOE's final decision on Saiz's security clearance. Based on the chronology and the undisputed material facts, the Court concludes that Saiz failed to raise a genuine issue of material fact as to the wrongful discharge claim. Accordingly, the Court finds that Saiz's claim for wrongful discharge fails as a matter of law.

III.     Prima Facie Tort

The elements of *prima facie* tort are: 1) an intentional and lawful act; 2) an intent to injure the plaintiff; 3) injury to the plaintiff as a result of the intentional act; and, 4) the absence of justification for the injurious act. Schmitz v. Smentowski, 109 N.M. 386, 785 P.2d 726 (1990). Saiz cannot establish each of the elements of a *prima facie* tort. It is questionable whether Saiz produced any evidence that Honeywell FM&T "intended" to injure Saiz. In addition, however, Honeywell FM&T provided evidence of legitimate justification for its discharge decision.

Moreover, *prima facie* tort is inapplicable to the termination of an at-will employee. EEOC v. MTS Corp., 937 F. Supp. 1503, 1516 (D.N.M. 1996). As noted above, Honeywell FM&T's SMF shows that Saiz was an at-will employee. Accordingly, the Court finds that Saiz's claim for *prima facie* tort fails as a matter of law.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is GRANTED. Accordingly, Plaintiff Marvin Saiz's Complaint is dismissed with prejudice.

_____
**Alan C. Torgerson**
**UNITED STATES MAGISTRATE JUDGE**